UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TRIMINGHAM AMERICAS INC.

Civil Action No.

Plaintiff,

vs.

PATRICK WALSH,

Defendant.

---

### **NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant, Patrick Walsh ("Removing Party") by the undersigned attorney, submits this Notice of Removal and states as follows:

1.     On April 7, 2005, the above-captioned action was commenced against the Removing Party in the Supreme Court of the State of New York, County of Erie, and is now pending.

2.     The Western District of New York in Buffalo, embraces the place where the above-captioned action is pending.

3.     On April 15, 2005, the Removing Party received a Summons and Complaint in the above-captioned action at 101 Regent Street, Richmond Hill, Ontario, Canada, L4C9P4, by mail.

4.     On information and belief, no other parties have been joined and served as Defendants in the above-captioned action.

{F:\WPMain\29157\18476\TMD8924.DOC}

5.     A copy of the Summons and Complaint is annexed hereto and constitutes all process, pleadings, and orders served upon the Removing Party in the above-captioned action.

6.     The above-captioned action is a civil action seeking monetary damages for breach of contract, among other causes of action, brought in a State Court of which the District Courts of the United States have original jurisdiction pursuant to 28 U.S.C. § 1332.

7.     At the time Plaintiff commenced this action in State Court and at the time or removal, the Removing Party was a resident of Ontario, Canada residing at 101 Regent Street, Richmond Hill, Ontario, Canada, L4C9P4.

8.     On information and belief, at the time Plaintiff commenced this action in State Court and at the time of removal, Plaintiff was and is a New York corporation with its principal place of business at 56 Lily Brooke Court, East Amherst, New York, 14051.

9.     Complete diversity of citizenship exists as between Plaintiff and Defendant.

10.    Plaintiff's Verified Complaint prays for damages in an amount in excess of $300,000.00, exclusive of interest and costs.  The amount in controversy exceeds the jurisdictional minimum of this Court.

11.    This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, and is filed with this Court within thirty (30) days after receipt by mail by the Removing Party of the Summons and Complaint in the above-captioned action.

12.   Written notice of filing of this Notice of Removal will be given to Plaintiff, and a copy will be filed in the appropriate State Court, as required by 28 U.S.C. § 1446(d).

13.   In filing this Notice of Removal, the Removing Party does not waive any defense that may be available to him.

14.   The Removing Party demands a jury trial.

WHEREFORE, the Removing Party prays that the action now proceeding against him be removed from the Supreme Court of the State of New York, County of Erie, to this Court.

DATED: May 3, 2005

**MENTER, RUDIN & TRIVELPIECE, P.C.**
*Attorneys for Defendant Patrick Walsh*

By: _____
       Mitchell J. Katz, of Counsel
       Julian B. Modesti, of Counsel
Office and Post Office Address:
500 South Salina Street, Suite 500
Syracuse, New York 13202-3300
Telephone: (315) 474-7541

TO:   William F. Savino, Esq.
      David S. Widenor, Esq.
      Damon & Morey LLP
      *Attorneys for Plaintiff*
      *Trimingham Americas Inc.*
      Office and Post Office Address:
      1000 Cathedral Place
      298 Main Street
      Buffalo, New York  14202-4096
      Telephone: (716) 856-5500

STATE OF NEW YORK
SUPREME COURT :: COUNTY OF ERIE
_____

**TRIMINGHAM AMERICAS INC.**
56 Lily Brooke Court
East Amherst, New York 14051                    **SUMMONS**

                   Plaintiff,              Index No. I 2005 - 3465

vs.
                                           FILED

**PATRICK WALSH**
101 Regent St.                             APR 7 - 2005
Richmond Hill, ON L4C9P4
                                           ERIE COUNTY
                   Defendant.              CLERK'S OFFICE
_____

To the above-named:

        You are hereby summoned and required to serve upon Damon & Morey LLP, attorneys
an answer to the complaint in this action within **TWENTY (20)** days after the service of this
summons, exclusive of the day of service, or within **THIRTY (30)** days after service is
completed if this summons is not personally delivered to you within the State of New York. In
case of your failure to answer, judgment will be taken against you by default for the relief
demanded in the complaint.

        The basis of the venue designated is the residence of Plaintiff, which is the State of New
York.

        The nature of this action is to seek monetary damages for breach of contract, among other
causes of action. In the case of default, judgment will be taken for the relief sought in the
complaint.

Dated: Buffalo, New York                    **DAMON & MOREY LLP**
       March 30, 2005

                                   By: _____
                                           William F. Savino, Esq.
                                           David S. Widenor, Esq.
                                           *Attorneys for Plaintiff*
                                           1000 Cathedral Place
                                           298 Main Street
                                           Buffalo, New York 14202-4096
                                           Tel:   (716) 856-5500

-#896832-

SENT BY: WALSH & KADOORY LLP;          4165936746;          APR-15-05  8:26PM;          PAGE 2

STATE OF NEW YORK
SUPREME COURT :: COUNTY OF ERIE

_____

TRIMINGHAM AMERICAS INC.,

|  |  |
|---|---|
| | **VERIFIED** |
| | **COMPLAINT** |
| Plaintiff, | |
| vs. | Index No. _____ |
| PATRICK WALSH, | |
| Defendant. | |

_____

    Plaintiff, Trimingham Americas Inc., by its attorneys, DAMON & MOREY LLP, complaining of Defendant above-named, respectfully alleges as follows:

### THE PARTIES

    1.    Plaintiff, Trimingham Americas Inc. ("Plaintiff"), is a domestic corporation incorporated and existing under and by virtue of the laws of the State of New York with its principle place of business at 56 Lily Brooke Court, East Amherst, New York 14051.

    2.    Plaintiff was organized as a domestic corporation in September, 2000, with 100 common shares.

    3.    Upon information and belief, Defendant Patrick V. Walsh ("Walsh") was and is, at all times mentioned herein, an individual residing in the Province of Ontario, Canada.

    4.    Walsh was and still is the Secretary of Plaintiff.

    5.    Walsh was and still is the equitable owner of ten percent (10%) of the shares of the common stock of Plaintiff.

SENT BY: WALSH & KADOORY LLP;          4165936746;          APR-15-05  8:26PM;          PAGE 3

## Nature of the Actions and Proceedings

6.     Plaintiff brings this action seeking legal and equitable relief with respect to breaches of fiduciary duties of loyalty and care, acts of misappropriation of Plaintiff's assets, and other wrongful conduct on the part of Walsh in his role as officer, shareholder, employee and/or agent of Plaintiff.

7.     The actions of Walsh as set forth herein have caused substantial damage to Plaintiff, which is believed to be in excess of 100,000.00.

## BACKGROUND FACTS

8.     Hugh Larratt-Smith organized and incorporated Plaintiff in September 2000 and, since its incorporation, has served as its President, a director, and its primary shareholder.

### Representative Agreement

9.     On April 1, 2004, Plaintiff, entered into a written Representative Agreement ("Agreement") with Walsh.

10.    A true and correct copy of the "Agreement" is attached hereto as **Exhibit** "A " and made part hereof.

11.    Pursuant to the Agreement, Walsh, as agent to Plaintiff, agreed to provide financial advisory and other consulting services to clients of Plaintiff.

12.    The Agreement provides, in Article 5, "Confidentiality," that Walsh "undertakes not to disclose the Confidential Information to any third party." Section 5.1.

13.    According to Article 7 section 7.1, "Term," the obligations set forth in Article 5 survive termination of the Agreement for a period of five (5) years.

2

14. The Agreement also provides, under Article 6, section 6.1, entitled "Non-Competition, Disclosure," that Walsh will not solicit "turnaround and crisis management consulting business," and will "refrain from joining any client" listed in an appendix to the Agreement.

15. The Non-Competition, Disclosure section states that this "non-competition covenant will be effective for a period of 36 months following termination of this Agreement."

16. In the course of Walsh's employment as a consultant, Plaintiff elected Walsh as Secretary of Plaintiff.

17. While associated with Plaintiff, Walsh performed the following business functions:

> a. Responsible for business development, including but not limited to meetings with referral clients of Trimingham in the states of New York, Connecticut, Massachusetts, Vermont, Maine, Pennsylvania and Rhode Island with the purpose of promoting Trimingham and gaining new business, attending industry conferences representing Trimingham with the objective of gaining new business; and

> b. Responsible for the corporate governance of Trimingham including but not limited to recruiting and managing Trimingham's consultants, maintaining the financial condition of Trimingham by means of cash reports and monthly Profit and Loss statements.

18. Plaintiff sold to Walsh ten percent (10%) of Plaintiff stock.

3

### Walsh Disregarded his
### Corporate and Representative Obligations

19.     On October 7, 2004, Walsh notified Larratt-Smith in writing that he was resigning from Plaintiff as a consultant.

20.     Walsh did not resign his position as Secretary of Plaintiff and has maintained that he is entitled to financial information regarding Plaintiff as a continued shareholder.

21.     Walsh incorporated Cedar Croft Consulting ("CCC") in 1998 in Ontario, Canada, as his own independent consulting firm.

22.     On or about October 7, 2004, Walsh, on behalf of CCC, wrongfully began actively soliciting and diverting business from Plaintiff, a company at which he continues to serve as an officer and shareholder, for the benefit of CCC.

23.     Beginning in October, 2004, Walsh began making false and misleading statements about Plaintiff to numerous clients and businesses affiliates of Plaintiff.

24.     Walsh, as an officer of the corporation, owed and continues to owe Plaintiff and its shareholders the duty to exercise due loyalty in the management and administration of the affairs of the corporation and in the use and preservation of its property and assets.

### AS AND FOR FIRST CAUSE OF ACTION
### AGAINST WALSH FOR BREACH OF FIDUCIARY DUTY

25.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs numbered "1" through "24" with the same force and effect as if set forth at length herein.

4

26.     Upon information and belief, pursuant to the Business Corporation Law,
Walsh has been guilty of, *inter alia*, the following illegal, fraudulent and/or oppressive
conduct associated with Walsh's breaches of his duties of loyalty and care toward
Plaintiff:

> a.      Walsh diverted Plaintiff's business assets by using Plaintiff
> intellectual property consisting of Trimingham's confidential database of
> clients and referral sources which Trimingham invested in excess of
> $1,300,000 developing and maintaining since its incorporation; human
> resources of Trimingham ( specifically Jack Eaves, P.E.,    David
> Stenstrom, Philip Albert and Linda Green CPA, who were key consultants
> of Trimingham); reputation, working papers, computer models and
> knowledge of prior Trimingham assignments, office staff, equipment and
> other corporate assets in the operation of CCC, the competing business
> owned and operated by Walsh;
>
> b.      Walsh used the assets of Plaintiff to operate his separate enterprise,
> CCC;
>
> c.      Walsh committed gross misconduct and breached fiduciary duties,
> all of which have caused substantial damage to Plaintiff.

27.     The wrongful conduct of Walsh constitutes a breach or breaches of the
statutory and/or common law fiduciary duties owed by him to Plaintiff and the
shareholders thereof and/or constitute gross misconduct on the part of Walsh.

28.     As a direct and proximate result of the wrongful conduct of Walsh,
Plaintiff has been deprived of money and property, the full extent of which is not known.

5

29.    Walsh has directly solicited and endeavored to divert the future business of the following clients of Plaintiff in the months of October, November and December, 2004, and January, February and March, 2005:

    a.    Wells Fargo Corporation and its subsidiaries and affiliates ("Wells Fargo");

    b.    Bank of America Capital Corporation, formerly known as Fleet Capital Corporation ("Bank of America");

    c.    CIT;

    d.    UPS Corporation and its subsidiaries and affiliates, formerly known as First International Bank ("UPS"), and

    e.    Citizens Bank.

    f.    Wachovia Financial Corporation and its subsidiaries

30.    Since its incorporation October 2000, Plaintiff earned consulting fees in excess of $6.3 million as a result of business relationships with the clients noted in paragraph "29."

31.    By reason of the foregoing, Plaintiff has been damaged in an amount to be proven at trial, but in no event less than $100,000.00.

32.    The wrongful conduct of Walsh was gross, wanton, willful, malicious and deliberately designed to injure Plaintiff, thereby entitling Plaintiff to punitive damages of not less than $300,000.00.

## AS AND FOR SECOND CAUSE
## OF ACTION AGAINST WALSH FOR
## AN INJUNCTION

33.   Plaintiff repeats, reiterates, and realleges each and every allegation set
forth in paragraphs numbered "1" through "32" with the same force and effect as if set
forth at length herein.

34.   The wrongful conduct of Walsh, including but not limited to Walsh's acts
of mismanagement, gross misconduct, negligence and breach of fiduciary duties of
loyalty and care, has caused and is causing irreparable injury to Plaintiff, including but
not limited to lost profits, lost good will and property to which Plaintiff is entitled.

35.   Plaintiff has no adequate remedy at law.

36.   Plaintiff is entitled to a preliminary and a permanent injunction against
Walsh to enjoin his wrongful conduct.

## AS AND FOR THIRD CAUSE
## OF ACTION AGAINST
## WALSH FOR AN ACCOUNTING

37.   Plaintiff repeats, reiterates, and realleges each and every allegation set
forth in paragraphs numbered "1" through "36" with the same force and effect as if set
forth at length herein.

38.   By virtue of his position as owner and officer, Walsh was entrusted with
the assets of Plaintiff.

39.   By reason of the wrongful conduct of Walsh, which conduct is contrary to
the best interests of Plaintiff, Plaintiff is entitled to an accounting of the revenue and
other funds obtained and disbursements by CCC (and the income thereon), the separate

7

outside entity established by Walsh, and also with respect to any and all revenue and other funds obtained and disbursements by CCC (and the income thereon) by or on behalf of Walsh in diverting the assets and/or property of Plaintiff to CCC;

40.     Plaintiff is otherwise entitled to an accounting with respect to the wrongful conduct of Walsh as set forth herein.

41.     Such an accounting is required by both equity and statute and applicable procedural and substantive law.

42.     Plaintiff has no adequate remedy at law.

## AS AND FOR FOURTH CAUSE OF ACTION AGAINST WALSH FOR VIOLATION OF SECTION 720 OF THE BUSINESS CORPORATION LAW

43.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs numbered "1" through "42" with the same force and effect as if set forth at length herein.

44.     Plaintiff against Walsh as officer, manager, director, agent and/or employee of Plaintiff for misconduct on the part of Walsh as alleged herein. Walsh has breached his statutory and/or common duties of care and loyalty owed toward Plaintiff and its shareholders.

45.     The wrongful conduct of Walsh, in his position as officer, manager, director, agent and/or employee of Plaintiff, constitutes neglect of duties, the failure to perform duties and/or other violations of duties in the management and disposition of the assets of Plaintiff, which duties were committed to the care of Walsh.

8

46.     The wrongful conduct of Walsh was and is unsatisfactory under the standards of and a violation of §720 of the Business Corporation Law and other generally applicable law.

47.     As a direct and proximate result of the wrongful conduct of Walsh, Plaintiff has been deprived of money and property, the full extent of which is not known.

48.     By reason of the foregoing, Plaintiff has been damaged in an amount to be proven at trial, but in no event less than $100,000.00.

49.     The wrongful conduct of Walsh was gross, wanton, willful, malicious and deliberately designed to injure Plaintiff, thereby entitling Plaintiff to punitive damages from Walsh of not less than $300,000.00.

## AS AND FOR FIFTH CAUSE
## OF ACTION AGAINST
## WALSH FOR AN ACCOUNTING

50.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs numbered "1" through "49" with the same force and effect as if set forth at length herein.

51.     By reason of the wrongful conduct of Walsh, which said conduct is contrary to the best interest of Plaintiff is entitled to an accounting, pursuant to §720 of the Business Corporation Law and other generally applicable law, with respect to the income and funds obtained by CCC, the separate outside entity established by Walsh; and also with respect to any and all income and funds obtained by or on behalf of Walsh in diverting Plaintiff's corporate assets to other businesses owned by Walsh; and also with respect to all funds diverted, looted and/or wasted by Walsh.

9

52.    Such an accounting is required by both equity and statute and applicable procedural and substantive law.

53.    Plaintiff has no adequate remedy at law.

## AS AND FOR SIXTH CAUSE OF ACTION
## AGAINST WALSH FOR
## TORTIOUS INTERFERENCE WITH
## PRE-CONTRACTUAL RELATIONS

54.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs numbered "1" through "53" with the same force and effect as if set forth at length herein.

55.    To obtain an interest in Plaintiff's name, experience, expertise, clientele, investment accounts and "leads," Walsh maliciously, fraudulently, and deceitfully misrepresented to Plaintiff that Walsh would perform all administrative, accounting and management obligations of his position as Secretary.

56.    After forming his outside business entity, CCC, Walsh maliciously, fraudulently, and deceitfully interfered with Plaintiff's contractual relations with current and prospective clients and business affiliates.

57.    All of the foregoing has specifically caused Plaintiff damage, including but not limited to, monetary damages in an amount not less than $100,000.00.

58.    Walsh has misappropriated and converted Plaintiff's assets and in so doing interfered in Plaintiff's ability to serve clients generated, maintained and serviced by Plaintiff prior to Walsh's solicitation of Plaintiff's business opportunities and prospective clients.

10

59.     The wrongful conduct of Walsh was gross, wanton, willful, malicious and deliberately designed to injure Plaintiff, thereby entitling Plaintiff to punitive and/or exemplary damages of not less than $300,000.00.

### AS AND FOR A SEVENTH CAUSE OF
### ACTION AGAINST WALSH
### FOR BREACH OF CONTRACT

60.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs numbered "1" through "59" with the same force and effect as if set forth at length herein.

61.     In soliciting current and prospective clients and business affiliates from Plaintiff immediately after termination of the Agreement, Walsh has violated his continuing contractual obligations under the Agreement, under Sections 5.1, 6.1, and 7.1.

62.     By reason of the foregoing, Plaintiff has been damaged in an amount to be proven at trial, but in no event less than $100,000.00.

63.     The wrongful conduct of Walsh was gross, wanton, willful, malicious and deliberately designed to injure Plaintiff, thereby entitling Plaintiff to punitive damages from Walsh of not less than $300,000.00.

### AS AND FOR AN EIGHTH CAUSE OF
### ACTION AGAINST WALSH
### FOR COMMERCIAL DISPARAGEMENT

64.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs numbered "1" through "63" with the same force and effect as if set forth at length herein.

11

65.    In or about October 2004, Walsh began making false and misleading statements about Plaintiff to numerous clients and businesses affiliates of Plaintiff. For example, Defendant claims that Plaintiff is incompetent.

66.    By reason of the foregoing, Plaintiff has been damaged in an amount to be proven at trial, but in no event less than $100,000.00.

67.    The wrongful conduct of Walsh was gross, wanton, willful, malicious and deliberately designed to injure Plaintiff, thereby entitling Plaintiff to punitive damages from Walsh of not less than $300,000.00 and a temporary and permanent injunction enjoining Walsh from making any further disparaging comments about Plaintiff to current or prospective clients and business affiliates.

## AS AND FOR A NINTH CAUSE OF
## ACTION AGAINST WALSH
### (Constructive Trust to Prevent Unjust Enrichment)

68.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "67" hereof, as though fully set forth herein at length.

69.    Larratt-Smith and Walsh are co-owners of Plaintiff and are the sole officers thereof.

70.    In reliance on his activities as a consultant to Plaintiff and on certain representations made by Walsh, Plaintiff hired Walsh to serve as its Secretary.

71.    Walsh and CCC have been unjustly enriched to the detriment of Plaintiff by virtue of their wrongful and inequitable conduct described herein.

72.    Any further benefit to Walsh and CCC based on the use and enjoyment of the conversion of the business opportunities and funds due Plaintiff pursuant to the

12

Walsh's fiduciary obligation to Plaintiff would only result in a further unjust enrichment to Walsh and CCC.

73.     Based on these facts and the nature of Defendant's actions, the Court should find in favor of Plaintiff the existence of a constructive trust of the revenue, funds, income and profits due and/or deemed or determined due Plaintiff, and declare Walsh to be trustee from the time of first possession of the revenue, funds, income and profits due and/or deemed or determined due Plaintiff and for the capitalization, profits, commissions and other funds still in the possession dominant and/or control of Walsh and/or CCC, until such time as an independent trustee and/or receiver can be appointed by this Court.

74.     As trustees of the constructive trust, Walsh should be made to account for all revenue, funds, income and profits due and/or deemed or determined due Plaintiff and the contributions and/or advances by him in Walsh's and/or CCC's possession dominion and/or control up and through the time that this Court appoints an independent trustee and said funds due or from Plaintiff are delivered to said custodian.

75.     Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff demands (individually and/or derivatively) Judgment as follows:

(a)     on the FIRST CAUSE OF ACTION, against Walsh, granting Plaintiff an award of damages in the amount of $100,000.00, or such greater amount as is proved at trial, together with an award of punitive damages in the amount of $200,000.00, and costs or some other amount as deemed just and proper by the Court;

13

(b)    on the SECOND CAUSE OF ACTION, permanently enjoining Walsh from wasting or diverting the assets of Plaintiff, and enjoining Walsh from permitting waste and diversion or from disposing of or paying out the same in any manner, and or from disposing of or paying out to himself or others any of the money or property of Plaintiff;

(c)    on the THIRD AND FIFTH CAUSES OF ACTION, for an accounting as to the business, affairs, finances, receipts and disbursements of CCC and also with respect to any and all income and funds obtained by or on behalf of Walsh in diverting the assets and/or property of Plaintiff to CCC;

(d)    on the FOURTH CAUSE OF ACTION, against Walsh granting Plaintiff, an award of damages in the amount of $100,000.00 or such greater amount as is proved at trial, together with an award of punitive damages in the amount of $200,000.00 and costs or some other amount as deemed just and proper by the Court;

(e)    on the SIXTH AND SEVENTH CAUSES OF ACTION, against Walsh granting Plaintiff an award of damages in the amount of $100,000.00 or such greater amount as is proved at trial, together with an award of punitive damages in the amount of $200,000.00 and costs or some other amount as deemed just and proper by the Court;

(f)    on the EIGHTH CAUSE OF ACTION, against Walsh granting Plaintiff an award of damages in the amount of $100,000.00 or such greater amount as is proved at trial, together with an award of punitive damages in the amount of $200,000.00, and costs or some other amount as deemed just and proper by the Court; and permanently enjoining Walsh from commercially disparaging Plaintiff;

14

(g)   on the NINTH CAUSE OF ACTION, against Walsh, imposing a constructive trust over the assets, property and business affairs of Plaintiff and/or CCC, with Walsh accountable as trustees from and after October 2004, and until such time as this Honorable Court appoints an independent trustee and the independent trustee takes possession of said assets, property and business affairs or other property until final judgment in this matter;

(h)   against Walsh, on all causes of action, for the costs and disbursements of this action and such other and further relief as may be just and proper and equitable.

DATED:      Buffalo, New York
            March 30, 2005

                              DAMON & MOREY LLP

                              By: _____
                                    William F. Savino, Esq.
                                    David S. Widenor, Esq.
                                    *Attorneys for Plaintiff*
                                    Trimingham Americas Inc.
                                    1000 Cathedral Place.
                                    298 Main Street
                                    Buffalo, New York 14202
                                    (716) 856-5500

-#896510-

15

## VERIFICATION

STATE OF NEW YORK     )
COUNTY OF ERIE        ) ss:

HUGH LARRATT-SMITH, being duly sworn, deposes and says: That deponent is President of TRIMINGHAM AMERICAS, INC., the plaintiff in the within action, pursuant to section 3020 of the Civil Practice Law and Rules; that deponent has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to deponent's knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters, believes same to be true.

The grounds for deponent's belief as to all matters not stated upon personal knowledge are investigations which deponent has caused to be made concerning the subject matter of this action and information acquired by deponent in the course of deponent's duties as President of said corporation and from the books and papers of said corporation.



Hugh Larratt-Smith

Subscribed and sworn to before me this
3b   day of   March   , 2005.

_____
Notary Public

-#896978-

JUDY NHA HUA
Commission # 1549869
Notary Public - California
Los Angeles County
My Comm. Expires Feb 4, 2009

# APPENDIX A

## REPRESENTATIVE AGREEMENT

**THIS AGREEMENT** made and effective as of the 1st day of April, 2004

**BETWEEN:**

### TRIMINGHAM AMERICAS INC.

(hereinafter called the "Company")

- **AND –**

**Patrick Walsh**

(hereinafter called the "Representative")

**WHEREAS** the Company performs financial advisory and other consulting services from time to time for a variety of clients (the "Clients"), including the Client(s) listed in Schedule A hereto;

**AND WHERAS** the Company requests the assistance of certain representatives to perform such services from time to time;

**AND WHEREAS** the Representative is desirous of working with the Company in the role of representative to assist the company in performing its financial advisory and other consulting services;

16

NOW THEREFORE in consideration of the mutual promises contained herein, the parties agree as follows:

## ARTICLE 1 – Appointment and Acceptance

1.1   The Company hereby appoints the Representative to be a representative of the Company for the purposes set forth herein and the Representative hereby accepts such appointment.

1.2   In this connection, the Company hereby authorizes the Representative to perform financial advisors and other consulting services, on behalf of and under the guidance and supervision of the Company, to service the Clients.

## ARTICLE 2 – Administration of Client Mandates

2.1   In performing the representative's work hereunder, the Representative shall:

   (a) use his/her best efforts to faithfully and diligently perform the financial advisory and other consulting services outlined in the mandate between the Company and the Clients;

   (b) refer all management and billing issues with Clients to the Company which shall conduct negotiations, discussions and communications regarding same on an exclusive basis;

2.2   The Company Shall

   (a) manage and bill the Clients on a regular basis in an effort to ensure timely payment of the Representative's billing to the Company;

   (b) generally provide management, billing, and administrative support to the Representative.

## ARTICLE 3 – Compensation

SENT BY: WALSH & KADOORY LLP;                4165936746;         APR-15-05  8:30PM;        PAGE 20/22

3.1     As full compensation for all services performed by the Representative as provided herein, the Company shall pay or cause to be paid to the Representative, and the Representative shall accept, a consulting fee calculated at the rate set out in Schedule "A" for each of the Company's Clients itemized therein. Such fee shall be based on the number of hours properly billed by the Representative on Client matters and the Representative shall submit to the Company invoices and timesheets describing the work performed and docketing his/her time in intervals of $1/10^{th}$ of an hour unless otherwise prescribed by the client(s).

3.2     The Company shall also reimburse the Representative for all reasonable out-of-pocket expenses incurred in performing services to for clients as described herein provided that such expenses have been pre-approved by the representative Client and are in accordance with the Client's policies for reimbursement of expenses.

3.3     Notwithstanding anything in Sections 3.1 and 3.2 above, the Company shall have no obligation to pay any compensation to the representative unless and until the Client(s) have paid the Company for the corresponding billing period. Upon receipt of payments from the client(s), the Company shall forthwith pay the Representative's invoice for the corresponding period.

## ARTICLE 4 – Relationship

4.1     The Representative will provide his/her services to the Company and to Clients as an independent contractor only and not as an employee. Accordingly, the Representative agrees that the Company shall have no liability or responsibility for the withholding, collection, or payment of any taxes of any nature on the Representative's behalf or for the Representative's benefit, including but not limited to the following:  income taxes, and Workers' Compensation. The Representative agrees to hold the Company harmless from and against any order, penalty, interest or tax that may be assessed or levied against the Company as a result of the Representative's failure or delay to make such payments or to file any return or information required by law or regulation.

## ARTICLE 5 – Confidentiality

5.1     The representative acknowledges that, as a representative of the Company, the Representative will acquire information about certain procedures, customs, policies, strategies, customers (both existing and prospective) and other matters which are confidential to the Company and/or the Clients (the "Confidential Information").    The Representative acknowledges that the Confidential Information could be used to the detriment of the Company and/or the Clients and the Representative undertakes not to disclose the Confidential Information to any third party or use it for the Representative's obligations hereunder.  Upon completion or other termination of a mandate with a Client, or upon request of the

Company or the Client at any time, the Representative shall return all files, working papers, reports, computer disks, statements, and other materials containing Confidential Information to the Company or the Client, as the case may be.

## ARTICLE 6 – Non-Competition, Disclosure

6.1     While using the trade name or service marks of Trimingham, the Representative agrees to refrain from soliciting turnaround and crisis management consulting business. The Representative will not disclose the nature of its relationship with the Company to any bank, commercial finance company, venture capital fund, insurance company, attorney or accountant in the United States. The Representative acknowledges and agrees that this covenant is reasonable and necessary for the protection of the Company's business, and does not excessively restrict the business or employment prospects of the Representative. This non-competition covenant will be effective for a period of 36 months following termination of this agreement.

### Article 7 – Term

7.1     The Term of this agreement shall commence on the effective date and shall remain in effect on a month-to-month basis, or until such date as the parties may agree in writing. Notwithstanding the foregoing, the parties shall have the right to earlier termination of this Agreement if another party fails to comply with any of its obligations under this Agreement. In any event, Obligations with respect to Confidential Information disclosed to or acquired by the Representative during the term of this Agreement shall survive any expiration or termination of this Agreement for a period of five (5) years.

## ARTICLE 8 – Severability

8.1     In the event that any provisions of this Agreement are held to be void, invalid, illegal or unenforceable by a court of competent jurisdiction, such finding shall not affect any of the remaining provisions, which shall remain in full forces and effect.

## ARTICLE 9 – Entire Agreement

9.1     This Agreement sets forth the entire agreement and understandings between the parties and supercedes and merges all prior oral and written understandings, representations and discussions between them respecting its subject matter. This Agreement may be amended only by a written agreement executed between the

parties.    No rights, obligations, representations or terms, other than those expressly recited herein, are to be implied from this Agreement.

## ARTICLE 10 – Governing Law

10.1    This Agreement shall be governed by the laws of the State of New York.

## ARTICLE 11 – Tradenames, Service Marks and Territoriality

11.1    The Representative acknowledges the exclusive use in the United States and Canada of the tradename "Trimingham Advisors", the service marks applicable to "911 For Lenders and Investors" and the secondary meaning of the international prohibition logo with "Hollywood Lifestyles", "Synergistic Acquisitions" and "Rubber Numbers" by Trimingham Americas Inc., a New York state corporation, and covenants not to use this tradename or service marks except when working on engagements under the terms of this Agreement.

## ARTICLE 12 –

Each of the parties to this Agreement have caused this agreement to be signed either personally or on its behalf by its duly authorized representatives as of the effective date of this Agreement.

_____Patrick Walsh


_____Hugh Larratt-Smith
Trimingham Americas Inc.


## SCHEDULE "A"


The Standard Fee between the parties shall be $150 per hour.

20

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TRIMINGHAM AMERICAS INC.                    Civil Action No.

                    Plaintiff,

          vs.                               **INDEX OF DOCUMENTS**

PATRICK WALSH,

                    Defendant.

---

          The following are documents filed in the State of New York, Supreme
Court, County of Erie action, Index No. 2005-3465:

          1.     Summons and Complaint.

DATED: May 3, 2005              **MENTER, RUDIN & TRIVELPIECE, P.C.**
                               *Attorneys for Defendant Patrick Walsh*

                               By:
                                    Mitchell J. Katz, of Counsel
                                    Julian B. Modesti, of Counsel
                               Office and Post Office Address:
                               500 South Salina Street, Suite 500
                               Syracuse, New York 13202-3300
                               Telephone: (315) 474-7541

TO:     William F. Savino, Esq.
        David S. Widenor, Esq.
        Damon & Morey LLP
        *Attorneys for Plaintiff*
        *Trimingham Americas Inc.*
        Office and Post Office Address:
        1000 Cathedral Place
        298 Main Street
        Buffalo, New York  14202-4096
        Telephone: (716) 856-5500